UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

PHARMACY CORPORATION OF            )
AMERICA d/b/a PHARMERICA;          )
PHARMERICA DRUG SYSTEMS, LLC;      )
AND PHARMERICA INSTITUTIONAL       )
PHARMACY SERVICES, LLC             )
                                   )
        PLAINTIFFS                 )
                                   )
v.                                 )          Case No. _____
                                   )
NORTHERN HILLS SENIOR LIVING       )
CENTERS, LLC; NSL BLUE HILLS, LLC  )
D/B/A BLUE HILLS HEALTH AND        )
REHABILITATION CENTER; NSL         )
BRIGHAM, LLC D/B/A BRIGHAM         )
HEALTH AND REHABILITATION          )
CENTER; NSL DEN-MAR, LLC D/B/A     )
DEN-MAR REHAB; NSL COUNTRY         )
GARDENS, LLC D/B/A COUNTRY         )
GARDENS SKILLED NURSING AND        )
REHABILITATION CENTER; NSL         )
FRANKLIN, LLC D/B/A FRANKLIN       )
HEALTH AND REHABILITATION          )
CENTER; NSL QUINCY, LLC D/B/A      )
QUINCY HEALTH &                    )
REHABILITATION CENTER; NSL         )
WALDEN, LLC D/B/A                  )
WALDEN HEALTH &                    )
REHABILITATION CENTER; NSL         )
CRAWFORD, LLC D/B/A                )
CRAWFORD SKILLED NURSING AND       )
REHABILITATION CENTER; KD          )
OPERATING, LLC D/B/A KATHLEEN      )
DANIEL NURSING AND                 )
REHABILITATION CENTER;             )
CHARLWELL OPERATING, LLC D/B/A     )
CHARLWELL HOUSE; KIMWELL           )
OPERATING, LLC D/B/A KIMWELL       )
NURSING AND REHABILITATION;        )
NSL HANOVER, LLC D/B/A HANOVER     )
TERRACE HEALTH &                   )
REHABILITATION CENTER; NSL         )

1

WYOMISSING, LLC D/B/A          )
WYOMISSING HEALTH AND          )
REHABILITATION CENTER; AND NSL )
OAK HILL, LLC D/B/A OAK HILL    )
HEALTH & REHABILITATION        )
CENTER,                        )
                               )
     DEFENDANTS.               )

## COMPLAINT

Plaintiffs Pharmacy Corporation of America d/b/a PharMerica, PharMerica Drug

Systems, LLC d/b/a PharMerica and PharMerica Institutional Pharmacy Services, LLC d/b/a

PharMerica (collectively "PharMerica") state as follows for their Complaint against Defendants

(1) Northern Hills Senior Living Centers, LLC ("Northern Hills"); (2) NSL Blue Hills, LLC

d/b/a Blue Hills Health and Rehabilitation Center ("Blue Hills"); (3) NSL Brigham, LLC d/b/a

Brigham Health and Rehabilitation Center ("Brigham"); (4) NSL Den-Mar, LLC d/b/a Den-Mar

Rehab ("Den-Mar"); (5) NSL Country Gardens, LLC d/b/a Country Gardens Skilled Nursing and

Rehabilitation Center ("Country Gardens"); (6) NSL Franklin, LLC d/b/a Franklin Health and

Rehabilitation Center ("Franklin"); (7) NSL Quincy, LLC d/b/a Quincy Health & Rehabilitation

Center ("Quincy"); (8) NSL Walden, LLC d/b/a Walden Health & Rehabilitation Center

("Walden"); (9) NSL Crawford, LLC d/b/a Crawford Skilled Nursing and Rehabilitation Center

("Crawford"); (10) KD Operating, LLC d/b/a Kathleen Daniel Nursing and Rehabilitation Center

("Kathleen Daniel"); (11) Charlwell Operating, LLC d/b/a Charlwell House ("Charlwell"); (12)

Kimwell Operating, LLC d/b/a Kimwell Nursing and Rehabilitation ("Kimwell"); (13) NSL

Hanover, LLC d/b/a Hanover Terrace Health & Rehabilitation Center ("Hanover"); (14) NSL

Wyomissing, LLC d/b/a Wyomissing Health and Rehabilitation Center ("Wyomissing"); and

(15) NSL Oak Hill, LLC d/b/a Oak Hill Health & Rehabilitation Center ("Oak Hill") (Blue Hills,

Brigham, Den-Mar, Country Gardens, Franklin, Quincy, Walden, Crawford, Kathleen Daniel,

Charlwell, Kimwell, Hanover, Wyomissing, and Oak Hill are each a "Facility Defendant" and

are together the "Facility Defendants") (Northern Hills and Facility Defendants are together the

"Defendants").

## NATURE OF ACTION

1.      This action arises out of the Facility Defendants' failure to pay PharMerica

for pharmaceutical goods and services provided by PharMerica to the residents of fifteen

skilled nursing home facilities (the "Facilities"), which at all times relevant were managed,

owned, operated, or otherwise controlled by the Facility Defendants, and Northern Hills'

use of its control over the Facility Defendants to cause them not to pay PharMerica.

2.      This action also arises out of Defendants' improper termination of the

parties' agreement while outstanding amounts were past due and owing to PharMerica.

## PARTIES

3.      Pharmacy Corporation of America is a California corporation with a

principal place of business in Louisville, Kentucky.  Thus, for purposes of diversity

jurisdiction, Pharmacy Corporation of America is a citizen of California and Kentucky.

4.      PharMerica Drug Systems, LLC is a Delaware limited liability company.

Its sole member is Pharmacy Corporation of America.  Thus, for purposes of diversity

jurisdiction, PharMerica Drug Systems, LLC is a citizen of California and Kentucky.

5.      PharMerica Institutional Pharmacy Services, LLC is a Delaware limited

liability company.  Its sole member is PMC Pharmacy Services, LLC.  PMC Pharmacy

Services, LLC's sole member is Pharmacy Corporation of America.  Thus, for purposes of

diversity jurisdiction, PharMerica Institutional Pharmacy Services, LLC is a citizen of California and Kentucky.

6.      Northern Hills is a Delaware limited liability company that is headquartered in Massachusetts. The sole member of Northern Hills is NSL Holdings, LLC. The members of NSL Holdings, LLC are 10-26 Nationwide Trust, Crestview 360 Trust, and Jonathan Bleier. Mr. Bleier is an individual who does not reside in, is not domiciled in, and is not a citizen of California, Kentucky or Delaware. The trustees of 10-26 Nationwide Trust and Crestview 360 Trust are individuals who do not reside in, are not domiciled in, and are not citizens of California, Kentucky or Delaware. Northern Hills may be served through its registered agent Vcorp Agent Services, Inc., 155 Federal Street, Suite 700, Boston, Massachusetts 01950.

7.      Blue Hills is a Delaware limited liability company. The sole member of Blue Hills is NSL Holdings, LLC. Thus, for purposes of federal diversity jurisdiction, Blue Hills is not a citizen of California, Kentucky or Delaware. Blue Hills may be served through its registered agent at Vcorp Agent Services, Inc., 155 Federal Street, Suite 700, Boston, Massachusetts 01950. Blue Hills owns and/or operates, or at one point owned and/or operated, a skilled nursing facility located at 1044 Park Street, Stoughton, Massachusetts 02702 (the "Blue Hills Facility").

8.      Brigham is a Delaware limited liability company. The sole member of Brigham is NSL Holdings, LLC. Thus, for purposes of federal diversity jurisdiction, Brigham is not a citizen of California, Kentucky or Delaware. Brigham may be served through its registered agent at Vcorp Agent Services, Inc., 155 Federal Street, Suite 700, Boston, Massachusetts 019500. Brigham owns and/or operates, or at one point owned

and/or operated, a skilled nursing facility located at 77 High Street, Newburyport,

Massachusetts 01950 (the "Brigham Facility").

9.      Den-Mar is a Delaware limited liability company.  The sole member of

Den-Mar is NSL Holdings, LLC.  Thus, for purposes of federal diversity jurisdiction, Den-

Mar is not a citizen of California, Kentucky or Delaware.  Den-Mar may be served through

its registered agent at Vcorp Agent Services, Inc., 155 Federal Street, Suite 700, Boston,

Massachusetts 01950.  Den-Mar owns and/or operates, or at one point owned and/or

operated, a skilled nursing facility located at 44 South Street, Rockport, Massachusetts

01966 (the "Den-Mar Facility").

10.     Country Gardens is a Delaware limited liability company.  The sole

member of Country Gardens is NSL Holdings, LLC.  Thus, for purposes of federal

diversity jurisdiction, Country Gardens is not a citizen of California, Kentucky or

Delaware. Country Gardens may be served through its registered agent at Vcorp Agent

Services, Inc., 155 Federal Street, Suite 700, Boston, Massachusetts 01950.  Country

Gardens owns and/or operates, or at one point owned and/or operated, a skilled nursing

facility located at 2045 Grand Army Highway, Swansea, Massachusetts 02777 (the

"Country Gardens Facility").

11.     Franklin is a Delaware limited liability company.  The sole member of

Franklin is NSL Holdings, LLC.  Thus, for purposes of federal diversity jurisdiction,

Franklin is not a citizen of California, Kentucky or Delaware.  Franklin may be served

through its registered agent at Vcorp Agent Services, Inc., 155 Federal Street, Suite 700,

Boston, Massachusetts 01950.  Franklin owns and/or operates, or at one point owned

and/or operated, a skilled nursing facility located at 130 Chestnut Street, Franklin, Massachusetts 02038 (the "Franklin Facility").

12.     Quincy is a Delaware limited liability company. The sole member of Quincy is NSL Holdings, LLC. Thus, for purposes of federal diversity jurisdiction, Quincy is not a citizen of California, Kentucky or Delaware. Quincy may be served through its registered agent at Vcorp Agent Services, Inc., 155 Federal Street, Suite 700, Boston, Massachusetts 01950. Quincy owns and/or operates, or at one point owned and/or operated, a skilled nursing facility located at 11 McGrath Highway, Quincy, Massachusetts 02169 (the "Quincy Facility").

13.     Walden is a Delaware limited liability company. The sole member of Walden is NSL Holdings, LLC.   Thus, for purposes of federal diversity jurisdiction, Walden is not a citizen of California, Kentucky or Delaware. Walden may be served through its registered agent at Vcorp Agent Services, Inc., 155 Federal Street, Suite 700, Boston, Massachusetts 01950. Walden owns and/or operates, or at one point owned and/or operated, a skilled nursing facility located at 785 Main Street, West Concord, Massachusetts 01742 (the "Walden Facility").

14.     Crawford is a Delaware limited liability company. The sole member of Crawford is NSL Holdings, LLC. Thus, for purposes of federal diversity jurisdiction, Crawford is not a citizen of California, Kentucky or Delaware. Crawford may be served through its registered agent at Vcorp Agent Services, Inc., 155 Federal Street, Suite 700, Boston, Massachusetts 01950. Crawford owns and/or operates, or at one point owned and/or operated, a skilled nursing facility located at 273 Oak Grove Avenue, Fall River, Massachusetts 02723 (the "Crawford Facility").

15.     Kathleen Daniel is a Massachusetts limited liability company.  The members of Kathleen Daniel are JLS Equities, LLC, 10-26 Nationwide Trust and Jonathan Bleier. Upon information and belief, the sole member of JLS Equities, LLC is Yaakov Sod, an individual who is not a citizen of California, Kentucky, or Delaware. Thus, for purposes of federal diversity jurisdiction, Kathleen Daniel is not a citizen of California, Kentucky or Delaware.  Kathleen Daniel may be served through its registered agent at Vcorp Agent Services, Inc., 155 Federal Street, Suite 700, Boston, Massachusetts 01950. Kathleen Daniel owns and/or operates, or at one point owned and/or operated, a skilled nursing facility located at 485 Franklin Street, Framingham, Massachusetts 01702 (the "Kathleen Daniel Facility").

16.     Charlwell is a Massachusetts limited liability company.  The members of Charlwell are JLS Equities, LLC, 10-26 Nationwide Trust and Jonathan Bleier. Thus, for purposes of federal diversity jurisdiction, Charlwell is not a citizen of California, Kentucky or Delaware.  Charlwell may be served through its registered agent at Vcorp Agent Services, Inc., 155 Federal Street, Suite 700, Boston, Massachusetts 01950.  Charlwell owns and/or operates, or at one point owned and/or operated, a skilled nursing facility located at 305 Walpole Street, Norwood, Massachusetts 02062 (the "Charlwell Facility").

17.     Kimwell is a Massachusetts limited liability company.  The members of Kimwell are JLS Equities, LLC, 10-26 Nationwide Trust and Jonathan Bleier. Thus, for purposes of federal diversity jurisdiction, Kimwell is not a citizen of California, Kentucky or Delaware.  Kimwell may be served through its registered agent at Vcorp Agent Services, Inc., 155 Federal Street, Suite 700, Boston, Massachusetts 01950.  Kimwell owns

and/or operates, or at one point owned and/or operated, a skilled nursing facility located at 495 New Boston Road, Fall River, Massachusetts 02720 (the "Kimwell Facility").

18.     Hanover is a Delaware limited liability company. The sole member of Hanover is NSL Holdings, LLC. Thus, for purposes of federal diversity jurisdiction, Hanover is not a citizen of California, Kentucky or Delaware. Hanover may be served through its registered agent at CT Corporation System, 9 Capitol Street, Concord, New Hampshire 03301. Hanover owns and/or operates, or at one point owned and/or operated, a skilled nursing facility located at 49 Lyme Road, Hanover, New Hampshire 03755 (the "Hanover Facility").

19.     Wyomissing is a Delaware limited liability company. The sole member of Wyomissing is NSL Holdings, LLC. Thus, for purposes of federal diversity jurisdiction, Wyomissing is not a citizen of California, Kentucky or Delaware. Wyomissing may be served through its registered agent at Vcorp Services, LLC, 314 N. 12th Street, Suite 100, Philadelphia, PA 19107. Wyomissing owns and/or operates, or at one point owned and/or operated, a skilled nursing facility located at 1000 East Wyomissing Blvd., Reading, Pennsylvania 19611 (the "Wyomissing Facility").

20.     Oak Hill is a Delaware limited liability company. The sole member of Oak Hill is NSL Holdings, LLC. Thus, for purposes of federal diversity jurisdiction, Oak Hill is not a citizen of California, Kentucky or Delaware. Oak Hill may be served through its registered agent at CT Corporation System, 450 Veterans Memorial Parkway, Suite 7A, East Providence, Rhode Island 02914. Oak Hill owns and/or operates, or at one point

owned and/or operated, a skilled nursing facility located at 544 Pleasant Street, Pawtucket, Rhode Island 02860 (the "Oak Hill Facility").[1]

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

22.     This Court has personal jurisdiction over the Facility Defendants as the entities operate nursing home facilities in Massachusetts and/or are controlled, or are alter egos of, their management company, Northern Hills, which is headquartered in Massachusetts.

23.     Moreover, this Court has personal jurisdiction over the Defendants because they caused damage to PharMerica in Massachusetts.

24.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2), because the events or omissions giving rise to the claims in this action occurred in this judicial district.

## STATEMENT OF FACTS

### *Original Facility Defendants' Agreement with PharMerica*

25.     Starting in March 2016, PharMerica, Northern Hills, and eleven of the Facility Defendants (Blue Hills, Brigham, Country Gardens, Crawford, Den-Mar, Franklin, Quincy, Walden, Hanover, Wyomissing, and Oak Hill, which are collectively the "Original Facility Defendants") entered into an agreement in which PharMerica agreed to provide pharmacy-related goods and services to the Original Facility Defendants for the residents

---

[1] All of the facilities referenced in Paragraphs 7-20 are hereinafter referred to collectively as the "Facilities."

of their Facilities, and the Original Facility Defendants agreed to pay PharMerica for those goods and services.

26.     Consistent with the parties' agreement, the Original Facility Defendants commenced performance by submitting written orders to PharMerica for pharmacy-related goods and services.  PharMerica performed under the agreement by filling those orders and delivering the ordered pharmacy-related goods and services to the Facilities operated by the Original Facility Defendants.  The Original Facility Defendants received and accepted PharMerica's deliveries of those pharmacy-related goods and services and otherwise retained the goods and services for use by the Original Facility Defendants' residents.

27.     PharMerica submitted detailed written monthly invoices to the Original Facility Defendants for the pharmacy-related goods and services provided, which contained the quantity and price terms for the goods and services provided, and the Original Facility Defendants received those invoices.

28.     The prices listed on the invoices for the goods and serviced provided by PharMerica were in accordance with the pricing to which PharMerica and the Original Facility Defendants agreed.  The Original Facility Defendants did not object to the invoice charges or the pricing therein.

29.     On or around November 2016, three of the Original Facility Defendants, Den-Mar, Quincy, and Walden, transferred operations to a new third party operator, and, as a result, discontinued ordering pharmacy goods and service from PharMerica.  However, to date, Den-Mar, Quincy, and Walden have failed to pay for pharmacy goods and services that they ordered from PharMerica, utilized, and for which they were reimbursed by Medicare.

*PSA Facility Defendants' Pharmacy Services Agreements with PharMerica*

30.     On or around January 2017, Pharmacy Corporation of America and the

remaining seven Original Facility Defendants (hereinafter "the PSA Facility Defendants")

executed Pharmacy Services Agreements ("PSAs"), to be effective as of March 1, 2016,

setting forth the terms for PharMerica's provision of pharmacy goods and services for the

PSA Facility Defendants and the PSA Facility Defendants' payment of compensation to

PharMerica for such goods and services.[2]

31.     Other than the applicable PSA Facility Defendant's name and address, the

terms of the seven PSAs are substantively identical.

32.     During the term of the PSAs, PharMerica was to be the exclusive provider

of pharmacy goods and services to the PSA Facility Defendants, in exchange for which the

PSA Facility Defendants were to compensate PharMerica as set forth in the PSAs.

33.     Under Section 6(B) of the PSAs, PharMerica was to provide a monthly

invoice to each PSA Facility Defendant.

34.     Pursuant to the PSAs, until January 1, 2017, the PSA Facility Defendants

were to pay PharMerica's invoices within 120 days of the statement date.  After that date,

the PSA Facility Defendants were required to pay PharMerica's invoices within 90 days of

the statement date.  PSAs § 6(D)(1).

35.     The PSA Facility Defendants agreed in Section 6(D)(2) to reimburse

PharMerica for any and all of its costs and expenses, including its reasonable attorneys'

fees, incurred in collecting payment.

---

[2] The PSAs contain sensitive commercial information, including pricing information, and thus are not attached hereto.  They will be provided to the Court and Defendants upon request.

36.     PharMerica provided pharmacy goods and services to all of the PSA Facility Defendants in accordance with the PSAs.

37.     PharMerica issued monthly invoices to the PSA Facility Defendants for the pharmacy-related goods and services provided, which included detailed information regarding all charges, including identification of the goods and the quantity and price terms for them.  The PSA Facility Defendants received those invoices.

38.     The prices listed on the invoices for the goods and services provided by PharMerica were in accordance with the pricing to which PharMerica and the PSA Facility Defendants had agreed.  The PSA Facility Defendants did not object to the invoice charges or the pricing of the goods and services therein in the manner set forth in the PSAs, which required PSA Facility Defendants to raise all disputes within ninety days via writing and to pay all undisputed amounts when due.  *See* PSAs § 6(C).

### *Kathleen Daniel, Charlwell, and Kimwell's Agreement with PharMerica*

39.     In or around mid to late 2016 to early 2017, Northern Hills and the related ownership acquired the operations of the Kathleen Daniel Facility, the Charlwell Facility, and the Kimwell Facility, and Kathleen Daniel, Charlwell, and Kimwell became the operators of those three Facilities.

40.     PharMerica reached an agreement with Northern Hills, Charlwell, Kimwell, and Kathleen Daniel for PharMerica to provide pharmacy services to Kathleen Daniel, Charlwell, and Kimwell and for Kathleen Daniel, Charlwell, and Kimwell to pay PharMerica for such pharmacy services.

41.     Consistent with the parties' agreement, Kathleen Daniel, Charlwell, and Kimwell commenced performance by submitting written orders to PharMerica for

pharmacy-related goods and services.  PharMerica performed under the agreement by filling those orders and delivering the ordered pharmacy-related goods and services to the Facilities operated by Kathleen Daniel, Charlwell, and Kimwell.  Kathleen Daniel, Charlwell, and Kimwell received and accepted PharMerica's deliveries of those pharmacy-related goods and services and otherwise retained the goods and services for use by the Kathleen Daniel, Charlwell, and Kimwell's residents.

42.     PharMerica submitted detailed written monthly invoices to Kathleen Daniel, Charlwell, and Kimwell for the pharmacy-related goods and services provided, which contained the quantity and price terms for the goods and services provided, and Kathleen Daniel, Charlwell, and Kimwell received those invoices.

43.     The prices listed on the invoices for the goods and serviced provided by PharMerica were in accordance with the parties' agreement.  Kathleen Daniel, Charlwell, and Kimwell did not object to the invoice charges or the pricing therein.

***All Facility Defendants Failed to Pay PharMerica***

44.     PharMerica provided goods and services to all of the Facility Defendants, issued monthly invoices to them, and otherwise satisfied all conditions for payment by Facility Defendants.

45.     Despite repeated demands, all of the Facility Defendants failed and refused to pay the sums due and owing to PharMerica for the pharmacy goods and services it provided to all of the Facility Defendants, as set forth in PharMerica's invoices.  A list of unpaid invoices is attached hereto as **Exhibit A**.

46.     The reasonable value of the goods and services provided by PharMerica for which it has submitted invoices but has not received payment exceeds $4 million, exclusive of interest, fees, and late charges.

47.     Interest is accruing pursuant to law.

48.     PSA Facility Defendants agreed in their agreements with PharMerica to pay costs and expenses, including reasonable attorneys' fees, PharMerica incurs in collecting payment. *See* PSAs § 6(D)(2).  PharMerica has incurred and will continue to incur such costs and expenses in pursuing payment.

49.     Upon information and belief, all of the Facility Defendants have been reimbursed by Medicare for all or a significant portion of the pharmacy-related goods and services provided by PharMerica, and have directly or indirectly benefited from such reimbursement.

50.     Upon information and belief, all of the Facility Defendants have reported PharMerica's invoice charges as valid expenses to the Internal Revenue Service for the purpose of reducing the amount of adjusted gross income on which all of the Facility Defendants and/or their members must pay taxes.  As a result, all of the Facility Defendants and/or their members have paid lower taxes than they otherwise would have.

**All PSA Facility Defendants Improperly Terminate the PSAs**

51.     The Initial Term of the PSAs was from March 1, 2016 through February 28, 2019.  Thereafter, the PSAs renewed for an additional one-year term, until February 28, 2020.  PSAs § 2.

52.     After the Initial Term, the PSAs could be terminated by either party by providing 152 days' prior notice.  *See* PSAs § 7(A).  However, a PSA Facility Defendant

14

could not terminate its respective PSA if it was past due as of the date of the termination notice or the effective date of the termination. *See* PSAs § 7(D).

53.     In or around late April and early May, 2019, the PSA Facility Defendants stopped ordering pharmacy-related goods and services from PharMerica.

54.     The PSA Facility Defendants did not provide PharMerica with 152 days' prior written notice before they stopped ordering pharmacy-related goods and services from PharMerica.

55.     The PSA Facility Defendants were past due on amounts owed to PharMerica at the time they stopped ordering pharmacy-related goods and services.

*Northern Hills*

56.     Northern Hills was aware of the agreements and PSAs between Facility Defendants and PharMerica for PharMerica to provide pharmacy-related goods and services to the Facility Defendants for the use of the residents of the skilled nursing facilities they owned and/or operated.

57.     Northern Hills controlled and directed the payments to vendors for each of the Facility Defendants.

58.     Northern Hills decided whether or not each of the Facility Defendants would pay PharMerica, how much they would pay PharMerica, and when they would pay PharMerica.

59.     Northern Hills exercised its control over the Facility Defendants to cause them to refuse to pay PharMerica, in violation of the agreements between the Facility Defendants and PharMerica.

60.     Northern Hills exercised its control over the Facility Defendants to cause them to stop ordering pharmacy goods and services from PharMerica and to thus terminate the PSAs in violation of their terms.

61.     Northern Hills benefited from PharMerica's services to the Facility Defendants because it relied on and was paid out of the operational revenue and cash receipts Facility Defendants generated and received, including Medicare reimbursement, which revenue and cash receipts would not have been obtained but for PharMerica's provision of essential pharmacy goods and services.

## Count I – Breach Of Contract For Non-Payment
### (All Facility Defendants)

62.     To the extent not otherwise inconsistent with this Count I, PharMerica hereby incorporates by reference the allegations previously set forth in this Complaint.

63.     PharMerica entered into valid and binding agreements with each of the Facility Defendants for PharMerica to provide pharmacy goods and services to Facility Defendants in exchange for compensation by the Facility Defendants.

64.     Without legal justification or excuse, Facility Defendants materially breached the agreements and the PSAs with PharMerica by failing to pay sums due and owing for the services provided.

65.     As a direct and proximate result of the breach of the agreements and the PSAs, PharMerica has suffered damages, including, but not limited to, amounts due and owing for pharmacy goods and services PharMerica provided to the Facility Defendants and their residents, none of which Facility Defendants have paid.

66.     Interest is accruing pursuant to law.

67. The PSAs provide that PharMerica may recover attorneys' fees and costs in collecting amounts due and owing under the PSAs. PharMerica has incurred attorneys' fees and other costs seeking to collect amounts due to it, including in preparing and filing this action, all of which are the responsibility of Facility Defendants. PharMerica is likely to incur substantial additional attorneys' fees as this case is litigated and prepared for trial, which also shall be the responsibility of Facility Defendants.

68. PharMerica is entitled to recover damages from the Facility Defendants in an amount to be proven at trial.

## Count II – Breach Of Contract For Improper Termination
### (PSA Facility Defendants)

69. To the extent not otherwise inconsistent with this Count II, PharMerica hereby incorporates by reference the allegations previously set forth in this Complaint.

70. The PSAs provide that any termination notice issued by the PSA Facility Defendants when there are payment amounts past due to PharMerica shall be void and that the PSA Facility Defendants may not terminate the PSAs unless they are current.

71. The PSAs provide that PharMerica is to be the exclusive pharmacy provider to the extent allowed by law.

72. While amounts were due and owing, the PSA Facility Defendants ceased ordering medications from PharMerica and began ordering medications from another pharmacy provider in violation of the terms of the PSAs, despite notice that their actions violated the terms of the PSAs.

73. As a result of the PSA Facility Defendants' breaches, PharMerica has suffered damages, including, but not limited to lost profits.

74.    PharMerica is entitled to recover damages from the PSA Facility Defendants in an amount to be proven at trial, including lost profits, interest and attorneys' fees.

## Count III – Promissory Estoppel
### (All Defendants)

75.    To the extent not otherwise inconsistent with this Count III, PharMerica hereby incorporates by reference the allegations previously set forth in this Complaint.

76.    Defendants continuously made promises to pay PharMerica at the beginning of PharMerica's services and periodically thereafter.

77.    Defendants made representations to PharMerica for the purpose of inducing it to provide and to continue to provide services to the Facility Defendants despite their failure to pay.

78.    PharMerica reasonably relied upon such representations made by Defendants.

79.    Defendants' representations and PharMerica's reliance thereon resulted in detriment and damages to PharMerica, and PharMerica is entitled to recover damages in an amount to be proven at trial.

## Count IV – Unjust Enrichment
### (All Defendants)

80.    To the extent not otherwise inconsistent with this Count IV, PharMerica hereby incorporates by reference the allegations previously set forth in this Complaint.

81.    PharMerica has provided valuable goods and services to Defendants for which it has not been paid.

82.     PharMerica's goods and services were rendered under circumstances pursuant to which Defendants reasonably should have expected that PharMerica would expect to be compensated.

83.     Defendants have knowingly and willingly received, or will receive, reimbursement by Medicare, directly or indirectly, for goods and services provided by PharMerica, and have wrongfully and intentionally withheld or will withhold such amounts from PharMerica.

84.     Consequently, Defendants have been unjustly enriched through the receipt of such goods and services and at the expense and to the detriment of PharMerica.

85.     Furthermore, Defendants had, and continue to have, a legal and fiduciary duty to immediately remit proceeds received in reimbursements from Medicare to PharMerica if they have not timely paid invoices as required by the PSAs.

86.     For these reasons, a constructive trust should be imposed on any and all proceeds which have been, or hereafter are, received by Defendants as reimbursement by Medicare for Pharmacy services provided by PharMerica.

## Count V – Account Stated
### (All Defendants)

87.     To the extent not otherwise inconsistent with this Count V, PharMerica hereby incorporates by reference the allegations previously set forth in this Complaint.

88.     Pursuant to the agreements and PSAs with PharMerica, Defendants agreed to pay PharMerica for the goods and services it supplied to Defendants.

89.     PharMerica delivered invoices for goods and services rendered by PharMerica to Defendants.

90.     Defendants, without justification, excuse or dispute of such invoices, have not paid PharMerica all of the amounts invoiced.

91.     PharMerica is entitled to recover damages from the Defendants in an amount to be proven at trial.

## Count VI – Tortious Interference with Contractual Relationship
### (Northern Hills)

92.     To the extent not otherwise inconsistent with this Count VI, PharMerica hereby incorporates by reference the allegations previously set forth in this Complaint.

93.     PharMerica and the Facility Defendants entered into agreements and the PSAs wherein PharMerica agreed to provide pharmacy goods and services to the Facilities and their residents, and the Facility Defendants agreed to pay PharMerica in accordance with the terms of the agreements and the PSAs.

94.     Pursuant to the PSAs, the PSA Facility Defendants agreed that they could not terminate the PSAs while payment amounts were past due.

95.     At all times relevant, Northern Hills was aware of the agreements and PSAs and the obligations of the Facility Defendants pursuant to said agreements and PSAs.

96.     Without justification or excuse, and for its own benefit, Northern Hills intentionally caused the Facility Defendants to breach the agreements and PSAs by causing or directing them to not pay PharMerica what was due and owing to it.

97.     Without justification or excuse, and for its own benefit, Northern Hills intentionally caused the PSA Facility Defendants to breach the PSAs by causing or directing them to terminate the PSAs while payment amounts were past due, which was in violation of the PSAs.

98.     As a results of Northern Hills' tortious interference with the agreements and PSAs, PharMerica has suffered damages, including, but not limited to, the amounts due and owing under the PSAs, lost profits, and interest.

99.     PharMerica is entitled to recover from Northern Hills in an amount to be proven at trial.

### Count VII – Attorneys' Fees
### (PSA Facility Defendants)

100.     To the extent not otherwise inconsistent with this Count VII, PharMerica hereby incorporates by reference the allegations previously set forth in this Complaint

101.     The PSAs between PharMerica and PSA Facility Defendants provide for the recovery of attorneys' fees incurred by PharMerica in the collection of amounts due and owing.

102.     PharMerica has incurred attorneys' fees and other costs in preparing and filing this action and is likely to incur substantial additional attorneys' fees and other costs as this case is litigated and prepared for trial, all of which are the responsibility of PSA Facility Defendants.

103.     PharMerica is entitled to recover damages from the PSA Facility Defendants.

WHEREFORE, PharMerica requests judgment against Defendants as follows:

A.     An award of compensatory damages in an amount to be proven at trial;

B.     The imposition of a constructive trust on sums received by Defendants as Medicare reimbursement for pharmaceutical products and services provided by PharMerica and not paid for by Defendants;

C.     PharMerica's costs, fees and disbursements, including reasonable

       attorneys' fees;

D.     Pre-judgment and post-judgment interest; and

E.     All other appropriate relief.

Dated: July 11, 2019

The Plaintiffs,
PHARMACY CORPORATION OF
AMERICA d/b/a PHARMERICA;
PHARMERICA DRUG SYSTEMS, LLC;
AND PHARMERICA INSTITUTIONAL
PHARMACY SERVICES, LLC
By Their Attorney,


/s/Jeffrey E. Poindexter
Jeffrey E. Poindexter, BBO 631922
Mary Ellen MacDonald, BBO
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
P.O. Box 15507
Springfield, MA 01115-5507
Direct: 413-272-6232
Fax: 413-272-6806
jpoindexter@bulkley.com
mmacdonald@bulkley.com

Of Counsel:

Jennifer Metzger Stinnett, *Pro Hac Vice
Admission to Be Sought*
Matthew C. Williams, *Pro Hac Vice
Admission to Be Sought*
FULTZ MADDOX DICKENS PLC
101 South Fifth Street, 27th Floor
Louisville, Kentucky 40202
Tel:  (502) 588-2000/Fax:  (502) 588-2020
jstinnett@fmdlegal.com
mwilliams@fmdlegal.com

3125734